UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CEDRIC ALLEN,

        Plaintiff,
v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

Hon. Ellen S. Carmody

Case No. 1:17-cv-1020

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 46 years of age on his alleged disability onset date. (PageID.258). Plaintiff successfully completed high school and worked previously as a foundry worker, grinder, and boats part finisher. (PageID.58). Plaintiff applied for benefits on September 5, 2014, alleging that he had been disabled since July 31, 2014, due to a thumb amputation and right knee problems. (PageID.258-64, 293). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.127-253).

On August 1, 2016, ALJ James Prothro conducted a hearing with testimony being offered by Plaintiff and a vocational expert. (PageID.67-125). In a written decision dated September 15, 2016, the ALJ determined that Plaintiff was not disabled. (PageID.52-59). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.29-34). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on June 30, 2015. (Tr. 54); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1]. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

---

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

The ALJ determined that through the date Plaintiff's insured status expired, Plaintiff suffered from: (1) traumatic partial amputation of the left thumb near the first joint; (2) chronic pain of the left hand; (3) bilateral knee pain; and (4) obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.54-55). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) no repetitive gripping, grasping, or pinching with his left hand; (2) no use of his left thumb; and (3) no use of vibrating tools. (PageID.56).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert reported that there existed approximately 12,600 jobs in Michigan and approximately 226,000 jobs nationally which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.83-86, 116-25). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.     **The ALJ Properly Assessed the Medical Opinion Evidence**

On July 31, 2014, Plaintiff, who is left-hand dominant, suffered an "industrial accident" which resulted in the amputation of a portion of his left thumb. (PageID.88, 501-05). Two of Plaintiff's care providers, Dr. Richard Moulton and Physician's Assistant Crystal Dole, subsequently articulated opinions that Plaintiff was more limited than the ALJ recognized. Plaintiff argues that he is entitled to relief on the ground that the ALJ failed to articulate sufficient reasons for affording limited weight to these opinions.

   A.     Dr. Moulton

Dr. Moulton treated Plaintiff immediately following his thumb injury, performing the necessary amputation procedure. (PageID.414-18). Dr. Moulton thereafter continued to treat Plaintiff. (PageID.491-506, 705-14). In the six weeks immediately following Plaintiff's thumb amputation, Dr. Moulton indicated that Plaintiff was unable to use his left hand to perform work activities. (PageID.492, 495, 497, 499). Plaintiff argues that the ALJ erred by not affording these opinions from his treating physician controlling weight.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating

physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

As the ALJ noted, the opinions cited to by Plaintiff "were self-limited to only a very short duration." (PageID.57). This is not surprising considering that the opinions in question were proffered in the first few weeks following Plaintiff's thumb injury. The subsequent medical evidence, however, reveals that Plaintiff's ability to use his left hand notably improved.

X-rays of Plaintiff's left hand, taken on September 3, 2014, revealed "no acute osseous, articular or soft tissue abnormality." (PageID.393). Physical therapy treatment notes dated October 3, 2014, indicate that Plaintiff was experiencing "an excellent increase in [his]

8

ability to incorporate [his left] hand into function." (PageID.550). Physical therapy treatment notes dated October 15, 2014, indicate that Plaintiff was "very happy with [his] ability to write with [a] ring pen." (PageID.564). Physical therapy treatment notes dated October 27, 2014, indicate that Plaintiff "was able to tolerate added exercises and resistance in program today with decreased pain." (PageID.581). X-rays of Plaintiff's left hand, taken on September 23, 2015, revealed "mild" arthritis, but otherwise no evidence of pathology. (PageID.705).

Just as Plaintiff's ability to function with his left hand improved following his injury, Dr. Moulton's opinions on this topic modified. On October 31, 2014, the doctor reported that Plaintiff was unable to use his thumb, but could nevertheless use his left hand as "a helping hand." (PageID.710). On January 16, 2015, Dr. Moulton reported that Plaintiff could return "to full time work without any particular restriction other than he should be conscious of his [thumb injury] when he is working." (PageID.708). On June 4, 2015, Dr. Moulton reported that Plaintiff "is functioning quite well." (PageID.706). These latter opinions by Dr. Moulton are not inconsistent with the ALJ's RFC assessment. The ALJ's decision, therefore, to discount the doctor's earlier, temporary, opinions is supported by substantial evidence.

B.   Physician's Assistant Crystal Dole

On June 28, 2016, Dole reported that Plaintiff was, in certain respects, more limited than the ALJ recognized. (PageID.1360). Plaintiff argues that the ALJ erred by not affording greater weight to Dole's opinion. As noted above, Plaintiff's insured status expired on June 30, 2015. Dole expressly stated that the limitations she identified did not apply prior to May 26, 2016, eleven months after Plaintiff's insured status expired. (PageID.1360). Thus, whether the ALJ's assessment of Dole's opinion is supported by substantial evidence is irrelevant because even

9

if Dole's opinion were afforded controlling weight it would not result in a different outcome. Accordingly, this argument is rejected.

**II.        The ALJ's Step Five Decision is Supported by Substantial Evidence**

As noted above, at step five of the sequential evaluation procedure, the burden shifts to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. As also noted above, a vocational expert testified that there existed approximately 12,600 jobs in Michigan and approximately 226,000 jobs nationally which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. Plaintiff nevertheless argues that the Commissioner failed to satisfy her burden at step five.

At the administrative hearing, the vocational expert testified that consistent with Plaintiff's RFC, Plaintiff would still be able to perform work as a machine tender and line attendant. (PageID.118-21). The vocational expert testified that there existed 101,000 machine tender jobs nationally and 7,800 such jobs regionally. (PageID.118-21). With respect to the line attendant position, the vocational expert testified that there existed 125,000 jobs nationally and 4,800 regionally. (PageID.118-21). The vocational expert also provided the Dictionary of Occupational Titles (DOT) codes applicable to the machine tender and line attendant positions. (PageID.118-21).

Plaintiff's present counsel represented Plaintiff at the administrative hearing and was afforded the opportunity to cross-examine the vocational expert. Plaintiff's counsel questioned the vocational expert about the relationship between the DOT categories and the Bureau of Labor Statistics' Standard Occupational Classification (SOC). Specifically, Plaintiff's

counsel asked the vocational expert, "would you agree that Bureau of Labor Statistics numbers are given in terms of SOC categories, which are larger categories than a single DOT?" (PageID.124). The vocational expert responded, "yes, that's how they report that." (PageID.124).

Where a vocational expert's testimony regarding the number of jobs a claimant can perform is based upon larger SOC categories from which the vocational expert then extrapolates how many jobs exist in a particular DOT sub-category, such may constitute improper speculation. For example, in *Hermann v. Colvin*, 772 F.3d 1110 (7th Cir. 2014), the court articulated the problem thusly:

> if the broad category contains 10,000 jobs, and there are 20 finer categories within it, one of which consists of the jobs the applicant can perform, the vocational expert would estimate, and the administrative law judge accept, that there were 500 jobs in that category. That would be an arbitrary estimate, since there would be no basis for thinking that all the finer categories include the same number of jobs—namely, in our example, 10,000 divided by 500.

*Id.* at 1114.

Plaintiff argues that the testimony by the vocational expert in this case suffers from this very defect. Specifically, Plaintiff argues that "the VE agreed that her numbers are for SOC categories, which are larger categories than a single DOT." (ECF No. 11 at PageID.1378). This, however, represents a misrepresentation of the vocational expert's testimony. The vocational expert did not testify that her testimony was based upon SOC categories. Instead, she merely agreed with Petitioner's counsel that one SOC category contains multiple DOT categories. While Plaintiff's counsel could have followed up the vocational expert's response with further questioning to determine if her testimony suffered from the potential defect identified above, counsel failed to do so. In sum, the record fails to support Plaintiff's argument. Accordingly, this claim is rejected.

**III.      Plaintiff is Not Entitled to a Sentence Six Remand**

In his appeal to the Appeals Council, Plaintiff submitted the results of a functional capacity evaluation performed on July 22, 2017. (PageID.35-38). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. Plaintiff argues that this matter should be remanded so that this evidence can be considered. The Court disagrees.

In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148). If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148.

To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006). Plaintiff cannot make the necessary showing. The evaluation in question was conducted more than two years after Plaintiff's insured status expired. Thus, it is not reasonable to believe that consideration of this evidence would have led to a different result. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date: December 20, 2018                  /s/ Ellen S. Carmody
                                                           ELLEN S. CARMODY
                                                           United States Magistrate Judge